NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

SCHOLASTIC FUNDING GROUP, LLC,    )
                                         )
                                         )     Civil Action No.: 07-557 (JLL)
                 Plaintiff,     )
                                         )     **O P I N I O N**
     v.                               )
                                         )
HERBERT KIMBLE, et al.,           )
                                         )
                 Defendants.    )
_____)

**LINARES, District Judge.**

This matter comes before the Court on Plaintiff Scholastic Funding Group, LLC's ("Plaintiff" or "Scholastic") motion for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 and Defendant Herbert Kimble's ("Defendant" or "Kimble") motion for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. The Court has considered the submissions of the parties and has heard oral argument. For the reasons set forth in this Opinion, Plaintiff's motion is denied in part and granted in part and Defendant's motion is denied.

## BACKGROUND

**A.    Procedural History**

On January 25, 2007, Scholastic filed a Verified Complaint and application for an Order to Show Cause in the Superior Court of New Jersey, Chancery Division, Bergen County, alleging claims for breach of contract, breach of the covenant of good faith and fair dealing,

misappropriation of confidential information, breach of the duty of loyalty, and various state law tort claims pursuant to New Jersey law.   The Honorable Peter E. Doyne, P.J.S.C. issued an Order to Show Cause with temporary restraints on January 29, 2007 (the "State Court TRO"). Defendants University Loan Services, LLC ("University") and Globex Marketing Services, LLC ("Globex") removed to this Court on February 2, 2007 with the consent of Kimble, invoking this Court's diversity jurisdiction.

On March 7, 2007 Kimble filed an Answer, Counterclaim, and Third Party Complaint as well as a motion for an Order to Show Cause with temporary restraints.  Kimble sought to (1) enjoin Scholastic from enforcing Article 5 of the Employment Agreement, except that Kimble shall not solicit or induce any of Scholastic's employees to terminate their employment in order to become employed with University or for any other reason; and (2) declare that Kimble may become employed with University if these parties so choose to resume their employment relationship.  The Court heard oral argument on March 9, 2007 and thereafter denied Kimble's request for temporary restraints.  The Court also set a briefing schedule for Kimble's pending motion for preliminary injunction and also for any contemplated cross-motion by Plaintiff. Plaintiff filed its motion for a preliminary injunction on March 16, 2007.  The Court heard argument on April 5, 2007 regarding both motions.  The instant Opinion addresses both the Plaintiff's and Defendant's motions for preliminary injunctive relief.

**B.    Factual Background**

The parties have made extensive and detailed factual submissions to the Court.  However, for the purposes of these motions, only the relevant factual background will be recounted.

Scholastic is a company involved in consolidation of student loans.  In the course of its

business, Scholastic purchases lists of potential customers - student loan holders - scrubs these lists of ineligible customers, and then calls the customers to inquire whether they are interested in consolidation.  When Scholastic began its operations, it sub-contracted with a call center in the Philippines and paid the call center on a per-customer/per-call basis.

On April 4, 2006, Scholastic hired Kimble as its Vice President of Operations.  With Kimble's assistance and input, Scholastic later determined that its prior business model might not be the most cost-efficient.  Scholastic then completed a study of its revenue and costs and concluded that it should change the structure of its operations.  Scholastic then changed its operations and began to utilize a wholly-owned, subsidiary call center in the Philippines rather than paying an outside center on a per-lead basis.

At the start of his employment with Scholastic, Kimble signed an employment agreement (the "Agreement") with Scholastic. Article 4 of the Agreement pertains to the Records, Trade Secrets & Inventions of Scholastic.  Section 4.02(a) of the Agreement defines "Confidential Information" of Scholastic as the following: "various trade secrets, consisting of code, compilations of data and information, devices, documents, drawings, equipment, files, formulas, inventions, patterns, processes, programs, records, sources of data and information, specifications, and similar items relating to the business of Scholastic, all of which are owned by Scholastic and regularly used in the operation of Scholastic's business." (Kimble Cert. Ex. 5) (the "Confidentiality Provision").  Section 4.02(b) stipulates that all Confidential Information, whether or not a trade secret, is the exclusive property of Scholastic and 4.02(c) prohibits any employee from misusing, misappropriating, giving, selling, furnishing, or disclosing during or after employment any trade secret.  (Id.).  Section 4.02(c) also prohibits an employee from

disclosing information about Scholastic's customers or vendors and from soliciting customers whom the employee called on during employment with Scholastic.  (Id.).  Finally, Section 4.02(e) directs an employee to return all Confidential Information to Scholastic upon termination of employment.

Article 5 sets forth a non-competition provision (the "Non-Compete Provision").  The Non-Compete Provision prohibits Kimble from competing either directly or indirectly for one year following termination.  (Id.).  Article 5(b) defines "not compete" as requiring the employee "not to engage or participate in any business that is substantially similar to, or competitive with, the present business of Scholastic."  (Id.).

Article 5, Section (d) also sets forth a non-solicitation provision (the "Non-Solicitation Provision") which prohibits Kimble from soliciting or inducing any of Scholastic's employees to terminate their employment or form an organization competing with Scholastic for a period of one year following termination of employment.  (Id.).

On January 15, 2007 Kimble resigned from Scholastic.  Kimble commenced employment with University on January 22, 2007.  The parties do not dispute that University is a direct competitor of Scholastic.  Pursuant to the terms of the Order to Show Cause issued by Judge Doyne, Kimble ceased working for University on January 29, 2007.

## DISCUSSION

**A.     Legal Standard for Preliminary Injunctive Relief**

A preliminary injunction is a "drastic and extraordinary remedy that is not to be routinely granted."  Intel Corp. v. ULSI Sys. Tech., Inc., 995 F.2d 1566, 1568 (Fed. Cir. 1993).  Nonetheless, a trial court's decision to issue a preliminary injunction is discretionary.  New

England Braiding Co., v. A.W. Chesterton Co., 970 F.2d 878, 882 (Fed Cir. 1992).  The Third

Circuit has held that "a district court has the authority to grant injunctive relief in an arbitrable

dispute, provided that the traditional prerequisites for such relief are satisfied."  Ortho Pharm.

Corp. v. Amgen, Inc., 882 F.2d 806, 812 (3d Cir. 1989).  The court identified those "traditional

prerequisites" as follows: (1) whether the movant has demonstrated reasonable probability of

eventual success in the litigation; (2) whether the movant has demonstrated that it will be

irreparably injured if pendente lite relief is not granted to prevent a change in the status quo; (3)

the possibility of harm to other interested persons from the grant or denial of the injunction; and

(4) the public interest.  Ortho Pharm., 882 F.2d at 812-13; see also Wright Med. Tech., Inc. v.

Somers  37 F.Supp.2d 673 (D.N.J. 1999).  The court further noted that "the 'preservation of the

status quo' represents the goal of preliminary injunctive relief in any litigation, including in an

arbitrable dispute."  Id. at 813.

Furthermore, in this Circuit, it is clear that preliminary injunctions may be granted to

enforce non-competition agreements.  See e.g., BP Chem. Ltd. v. Formosa Chem. & Fibre Corp.,

229 F.3d 254 (3d Cir. 2000); Arch Pers. Care Prod., L.P. v. Malmstrom, 90 Fed.Appx. 17 (3d

Cir. 2003).

**B.     Plaintiff's Motion for Preliminary Injunction**

Plaintiff's motion for a preliminary injunction asks this Court to:

1) Preliminarily enjoin Kimble from:

> a) accepting or continuing employment with, consulting, advising, and/or
> providing services directly or indirectly to University or any affiliate, etc, to the
> extent that such services would involve, in any manner, the marketing,
> development, construction, or operation of a company in the business of
> consolidating and/or refinancing student loans;

b) soliciting or inducing employees of Plaintiff or any affiliate/subsidiary to terminate their employment.

2) Preliminarily enjoin and restrain all Defendants, and all persons acting in concert with them, from:

a) directly or indirectly obtaining, using, transmitting, divulging or communicating in any fashion or manner Plaintiff's Confidential Information, including any documents containing or evidencing Confidential Information;

b) directly or indirectly doing business with (which shall include servicing, selling, and/or soliciting) any, clients, affiliates, partners or prospects to become any of the foregoing whom Plaintiff serviced, worked with, sold to, and/or solicited during Kimble's employment with Plaintiff;

3) Compel all Defendants, their agents, servants, representatives, employees, successors, and all other persons acting on their behalf or in concert with them, to cease from using and return forthwith any and all of Plaintiff's property, including, but not limited to Plaintiff's Confidential Information, in their possession, custody or control.

During oral argument, when asked by the Court which claims of the Verified Complaint are those upon which Plaintiff seeks injunctive relief, counsel for Plaintiff responded that such relief truly turns on the Agreement.  (Tr. 8:24-25)[1].  Accordingly, the Court will focus its analysis on Plaintiff's breach of contract claim.

**1.      Likelihood of Success on the Merits**

The party seeking a preliminary injunction must demonstrate a "reasonable probability of eventual success in the litigation."  Kershner v. Mazurkiewicz, 670 F.2d 440, 443 (3d Cir. 1982). In evaluating whether a moving party has satisfied this first part of the preliminary injunction standard, "[i]t is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather, the burden is on the party seeking relief to make a prima facie case

---

[1]All citations to the Transcript are to the record of the oral argument held April 5, 2007.

showing a reasonable probability that it will prevail on the merits." Oburn v. Shapp, 521 F.2d 142, 148 (3d Cir. 1975) (citations omitted).  Further, if all other factors of the preliminary injunction test are present, the requirement of likelihood of success can be eased a bit. Constructors Ass'n of W. Pa. v. Kreps, 573 F.2d 811, 815 (3d Cir. 1978).

Here, the Court must examine the likelihood of Plaintiff's success in showing it has a reasonable probability of success against Defendants on its claim for breach of contract.

Under New Jersey law, the following four elements are necessary in a breach of contract claim: "(1) a contract; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that plaintiff performed its own contractual duties." Hutchinson v. Del. Sav. Bank FSB, et al., 410 F. Supp. 2d 374, 385 n. 21 (D.N.J. 2006).  Plaintiff's breach of contract claim is best analyzed under the three provisions of the Agreement Defendant Kimble has allegedly breached.

               a)       *Non-Compete Provision*

Here, there is clearly the existence of a contract signed by Kimble which contains a specific non-compete provision.  Plaintiff argues that Kimble breached this provision when he began his employment with University.  Kimble argues that the non-compete provision is invalid because it is unreasonable in scope and does not pertain to a protectible interest of Plaintiff's. Thus Kimble argues that Plaintiff is unable to demonstrate a likelihood of success on the merits of this claim.

It is settled law in New Jersey that restrictive covenants are valid in appropriate circumstances. Solari Indus., Inc. v. Malady, 55 N.J. 571, 576 (1970).  A covenant by an employee not to compete with his employer after their employment relationship ceases will be found to be enforceable if it is reasonable in light of the totality of circumstances. Id.  A

-7-

covenant that "simply protects the legitimate interests of the employer, imposes no undue hardship on the employee, and is not injurious to the public" will generally be upheld.  Id.; Ingersoll-Rand Co. v. Ciavatta, 110 N.J. 609, 628 (1988).

Here, the Agreement in question seeks to protect Plaintiff's "various trade secrets, consisting of code, compilations of data and information, devices, documents, drawings, equipment, files, formulas, inventions, patterns, processes, programs, records, sources of data and information, specifications, and similar items relating to the business of [Scholastic], all of which are owned by [Scholastic] and regularly used in the operation of [Scholastic's] business." (Agreement 4.02(a)).  Defendants argue that the Non-Compete Provision does not protect the legitimate interests of Plaintiff and is thus unreasonable.

It is well-settled that a non-compete agreement which seeks only to restrain competition is unreasonable.  Whitmyer Bros., Inc. v. Doyle, 58 N.J. 25, 32-33 (1971).  However, the New Jersey Supreme Court recognizes that an "employer has a patently legitimate interest in protecting his trade secrets as well as his confidential business information and he has an equally legitimate interest in protecting his customer relationships.  Id. at 33.  During oral argument, counsel for Kimble acknowledged that the process which Plaintiff claims it used to implement a change in its operations is confidential.  (Tr. 82:2-6).  It can thus be said that Plaintiff necessarily has a protectible interest in its revenue/cost analysis since it constitutes confidential business information.  The Court need not analyze whether Plaintiff maintains other legitimate interests, since Plaintiff's interest in protecting this undisputedly confidential business information satisfies the test for reasonableness of the Non-Compete Provision.

The Court now turns to whether the Non-Compete Provision is reasonable as to its

duration and scope.  Here, the Non-Compete Provision prohibits Kimble from obtaining

employment with and performing certain services for direct competitors of Plaintiff for twelve

months and contains no geographic limitation.  In determining reasonableness, New Jersey courts

consider duration, geographic limits and the scope of activities prohibited.  The Cmty. Hosp.

Group, Inc. v. More, 183 N.J. 36, 58 (2005).  "Each of those factors must be narrowly tailored to

ensure the covenant is no broader than necessary to protect the employer's interests."  Id. at 58

(citing Karlin v. Weinberg, 77 N.J. 423 (1987).  Here, it cannot be said that the one-year

limitation is onerous or unreasonable.  One year limitations have been upheld by New Jersey

courts.  See e.g., Balsamides v. Protameen Chems, Inc., 160 N.J. 352 (1999).  Further, the Court

does not find the lack of geographic limitation on the Non-Compete Provision unreasonable.

Since the telemarketing industry is broad-ranging in its scope by the nature of its business

(placing nationwide telephone calls), the geographic scope of the covenant, or lack thereof, is

likely a reasonable restriction.

Kimble also argues that the terms of the Non-Compete Provision impose an undue

hardship upon him since he is allegedly unable to procure employment within the telemarketing

industry.  Coskey's Television v. Foti, 253 N.J. Super. 626, 633 (App. Div. 1992).  However, this

case is distinguishable from the facts of Coskey's Television.  Here, the Non-Compete Provision

at issue does not render Kimble an "indentured servant" in effect.  Id. at 636.  Rather, Kimble is

restricted only from seeking employment with a direct competitor of Plaintiff's involved in

student loan-related telemarketing.  Kimble himself certifies that of his over seventeen (17) years

of experience within the telemarketing and call center industry, his first exposure to the student

loan sector was in August, 2005.  (Kimble Certification 3/7/07 ¶ 1).  Thus, at the time of his

resignation from his position with Scholastic, Kimble had only a year and a half of experience in this particular niche of the broader industry.  (Id.).  Accordingly, the Court dismisses Kimble's argument that the Non-Compete Provision imposes an undue hardship upon him.

Next, the Court must determine whether Kimble breached the Non-Compete Provision. Plaintiff is likely to satisfy this element since Kimble undisputedly accepted and began employment with University, a close competitor of Plaintiff who is also engaged in the business of student loan consolidation telemarketing.  Plaintiff also is likely to establish that it has suffered damages stemming from Kimble's breach of the Non-Compete Provision, since Plaintiff is a new company, lost its highest-paid executive to a direct competitor and has suffered lower revenues since that point in time.  For these reasons, the Court determines that Plaintiff has a likelihood of success on the merits of its claim that Kimble breached the Non-Compete Provision.

b)    *Non-Solicitation Provision*

Article 5, Section (d) sets forth a non-solicitation provision (the "Non-Solicitation Provision") which prohibits Kimble from soliciting or inducing any of Scholastic's employees to terminate their employment or form an organization competing with Scholastic for a period of one year following termination of employment.  (Kimble Cert. Ex. 5).

Here, a valid contract clearly exists between Kimble and Plaintiff which contains a non-solicitation provision.  Plaintiff argues that Kimble breached this provision when he solicited two Scholastic employees/affiliated employees to join the employ of University.  Kimble denies soliciting these employees and argues that their departure from Plaintiff was mere coincidence. However, given the timing of their departure from Scholastic (so close in time to Kimble), and

-10-

Kimble's counsel's representation on the record before this Court that Kimble and one of the departing employees, Ms. Olive Manlapaz, are close friends, this Court finds it likely that Plaintiff will succeed in demonstrating that Kimble breached the Non-Solicitation Provision. The Court also finds it likely that Plaintiff is likely to succeed in demonstrating the existence of damages stemming from the breach since Plaintiff has had to expend resources to replace the departed employees. Accordingly, the Court determines that Plaintiff is likely to succeed on the merits of its breach of contract claim with respect to the Non-Solicitation Provision.

c)     <em>Confidentiality Provision</em>

Here, a contract exists, signed by Kimble, which contains a specific confidentiality provision. Plaintiff argues that Kimble breached this provision of the Agreement when he obtained and passed along certain confidential information to University, including 1) information pertaining to "leads" purchased and potential customer lists; 2) information related to Plaintiff's relationships with certain lenders; 3) Plaintiff's call transfer protocols; 4) Plaintiff's call center and agent scripts; 5) employee training manuals and methods; 6) employee payroll and contact information; and 7) Plaintiff's unique captive call center model/process. Kimble argues that Plaintiff is unable to demonstrate a likelihood of success on the merits on this claim because none of the information cited to by Plaintiff is in fact confidential. At oral argument, the parties agreed that certain information was confidential – namely, any list of <em>existing</em> customers of Plaintiff and the financial methodology used by Plaintiff in its operations analysis which resulted in an overhaul of its operations.

Here, it is established in the record that before hiring Kimble, University utilized a captive call center in Florida, but did not employ one in the Philippines until after Kimble's start

-11-

with the company.  (Tr.  66:24 - 67:15).  Further, Plaintiff has cited to an email sent by Kimble to

Adam Shorr, a principal of University, which attached a copy of the financial study conducted by

Plaintiff regarding its operations.  Kimble admits sending this email and attachment, but

contends it was with the knowledge of Plaintiff and was without any objection.  (Kimble Cert. ¶¶

72-73).  Based upon the timing of this email, Kimble's acceptance of a position with University

despite his current employment with Plaintiff, and University's subsequent switch to utilization

of a call center in the Philippines, this Court determines that Plaintiff is likely to succeed in

proving that Plaintiff has breached the Confidentiality Provision.  The Court also finds that

Plaintiff is likely to succeed on the merits that it has suffered damages as a result of this breach.

As a new company with financial struggles, it is likely that having its direct competitor gain

access to its confidential business information will likely result in lower revenues, thus causing

damages.  Accordingly, Plaintiff has demonstrated that it has a likelihood of success on the

merits on its breach of contract claim with respect to the Confidentiality Provision.

### 2.        Irreparable Harm

In order to satisfy the second requirement for a preliminary injunction, the movant must

"demonstrate potential harm which cannot be redressed by a legal or an equitable remedy

following a trial."  Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir.

1989).  In the context of non-competition agreements, irreparable injury may be shown if the

former employee may "avail himself of sensitive product strategies both as to development and

marketing," which may be of extreme value to the competitor.  Bausch & Lomb Inc. v. Smith,

630 F.Supp. 262, 265 (W.D.N.Y.1986).  See also Manhattan Associates, Inc. v. Ruderman, 2005

WL 2290297 (D.N.J. 2005).  Furthermore, "[g]rounds for irreparable injury include loss of

control of reputation, loss of trade, and loss of goodwill." <u>Pappan Enters., Inc. v. Hardee's Food Sys., Inc.</u>, 143 F.3d 800, 805 (3d Cir. 1998).

Here, Plaintiff contends that it has satisfied the irreparable harm requirement because the disclosure of confidential and proprietary information can constitute the basis for damages irreparable by way of money damages. Plaintiff contends that it has "direct evidence that confidential information was taken, and, given Defendants' intimate knowledge of and possession of Plaintiff's trade secrets, confidential, proprietary, and sensitive business and technical information, it is only a matter of time before Defendants will inevitably utilize and disclose Plaintiff's confidential information." (Pl. Br. at 28). Notably, however, Plaintiff also concedes that "it appears [Defendants] have already done so." (<u>Id.</u>). That is, Plaintiff appears to concede that Defendants have already utilized and disclosed Plaintiff's allegedly confidential information. This appears to indicate that any harm, if realized, is already completed and cannot thus be considered immediate.

Kimble argues that there is no risk of further harm in the absence of an injunction because Kimble is no longer employed by Scholastic and thus has no access to Scholastic's allegedly confidential information or employee contact information. (Kimble Br. Opp'n at 28). Kimble further argues that any harm sustained can be remedied by way of money damages. (<u>Id.</u>).

Defendant University and Globex argue that the Court must deny Plaintiff's motion for a preliminary injunction because Plaintiff is unable to demonstrate that it possesses protectible proprietary information and thus cannot establish irreparable harm. (University Br. Opp'n at 11). These Defendants argue that Plaintiff has made only conclusory statements regarding irreparable harm which are insufficient. (<u>Id.</u> at 30). To the extent that Plaintiff argues it has lost business

opportunities or customers, Globex and University argue that such losses can clearly be remedied by an accounting and subsequent money damages.  (Id.).  These Defendants argue that Kimble has no specific technical knowledge or other confidential information stored in his brain, nor has Plaintiff established that imminent disclosure would be harmful.

The Third Circuit has held that:

> **more than a risk of irreparable harm** must be demonstrated. The requisite for injunctive relief has been characterized as a 'clear showing of immediate irreparable injury', or a 'presently existing actual threat; [an injunction] may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights' ⋯ '[i]njunctions will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties. Nor will an injunction be issued to restrain one from doing what he is not attempting and does not intend to do.

Continental Group, Inc. v. Amoco Chem. Corp., 614 F.2d 351, 359 (3d Cir.1980) (citations omitted) (emphasis added).  The moving party must demonstrate an "**imminent threat of disclosure.**" E.R. Squibb & Sons, Inc. v. Hollister, Inc., 1991 WL 15296 (D.N.J. 1991) (emphasis added).  "[I]n the context of of determining whether a threat of disclosure exists, it is but a finding as to the probable future consequences of a course of voluntary action undertaken by the defendants.  Courts are frequently called upon to draw such conclusions based on a weighing of the probabilities, and while a conclusion that a certain result will probably follow may not ultimately be vindicated, courts are nonetheless entitled to decide or 'predict' the likely consequences arising from a given set of facts and to grant legal remedies on that basis." Nat'l Starch and Chem. Corp. v. Parker Chem. Corp., 219 N.J. Super. 158, 163 (App. Div. 1987).

To demonstrate irreparable harm, the moving party must show more than a mere risk that information will be disclosed – the party must instead demonstrate a clear threat of

-14-

misappropriation or imminent threat of disclosure.  <u>E.R. Squibb & Sons</u>, 1991 WL 15296, \*10;

<u>PepsiCo, Inc. v. Redmond</u>, 54 F.3d 1262 (7th Cir. 1995).

     Here, the Court will analyze whether Plaintiff has met the requirement of irreparable

harm for each type of injunctive relief requested.

     a)    *Enjoining Kimble from Violating the Non-Compete Provision*

     Plaintiff argues that if Kimble is not restrained from competing with Plaintiff, it will

suffer loss of goodwill and loss of control over its reputation with respect to its customers and

competitors.  This Circuit recognizes that "[g]rounds for irreparable injury include loss of control

of reputation, loss of trade, and loss of goodwill."  <u>Pappan Enters., Inc. v. Hardee's Food Sys.,</u>

<u>Inc.</u>, 143 F.3d 800, 805 (3d Cir. 1998).  Should Kimble start communicating with vendors and

other business entities on behalf of University, when just months ago he was likely contacting

these same entities on behalf of Plaintiff, there is a risk that this will affect these parties'

perception of Plaintiff's industry reputation.  Accordingly, the Court finds that if it does not grant

the relief requested by Plaintiff in enjoining Kimble from violating the Non-Compete Provision,

Plaintiff will suffer an immediate, irreparable harm.

     b)    *Enjoining Kimble from Violating the Non-Solicitation Provision*

     Plaintiff seeks to restrain Kimble from soliciting or inducing employees of Plaintiff or

any affiliate/subsidiary to terminate their employment.  Plaintiff argues that if Kimble is not

restrained from violating the Non-Solicitation Provision Plaintiff will lose key employees to an

industry competitor, creating the risk of immediate, irreparable harm.  However, Kimble

maintains that he has not, and is not, soliciting employees of Plaintiff.

     For reasons similar to those just discussed, the Court determines that if Kimble if not

restrained from violating the Non-Solicitation Provision, Plaintiff's reputation and goodwill will be damaged since its competitors and clients will likely view any "defection" of employees to a competitor in a negative light.  Further, since Plaintiff is a relatively young company, any harm to its reputation will be amplified. Accordingly, the Court finds that if Kimble is not enjoined from violating the Non-Solicitation Provision, Plaintiff faces a risk of immediate, irreparable harm to its goodwill and reputation.

> c) *Enjoining/Restraining Defendants from Obtaining, Using and/or Divulging Plaintiff's Confidential Information*

Plaintiff seeks to restrain/enjoin Defendants from directly or indirectly obtaining, using, transmitting, divulging or communicating in any fashion or manner Plaintiff's confidential information, including any documents containing or evidencing confidential information. Kimble argues that to the extent this relief seeks to restrain him from obtaining, transmitting, or communicating any alleged confidential information, such relief is moot since he no longer has access to same.  Defendants University and Globex argue that there is no risk of immediate, irreparable harm because they do not have any such information in their possession so there is no risk of them using, transmitting, divulging, or communicating same.

During argument, the Court questioned Plaintiff's counsel at length regarding the element of immediate irreparable harm with respect to the Confidentiality Provision.  The Court asked Plaintiff's counsel how a risk of immediate harm could exist if Kimble had, as alleged, already disclosed the methodology and the lists of existing customers to University.  (Tr. 13:7 - 15:2). However, counsel focused only on the irreparable portion of the analysis, and did not fully address the Court's line of questioning.  (Tr. 15:3 - 20).  With respect to confidential

information, the moving party must demonstrate an "imminent threat of disclosure, " E.R.

Squibb & Sons, 1991 WL 15296 at *10,  yet even the Plaintiff's Verified Complaint alleges that

Kimble has already disclosed the information at issue, rendering any "threat" of disclosure moot.

While the Court has reviewed the cases cited by Plaintiff during argument in detail, the Court

finds that these cases only lend support to its argument of irreparability, not immediacy.

Accordingly, since there exists no imminent threat of disclosure as to Plaintiff's alleged

confidential and protectible information since same has been disclosed, the Court finds that

Plaintiff fails to make such the requisite showing of immediacy.

This Circuit has placed particular weight on the probability of irreparable harm and the

likelihood of success on the merits elements of the standard for preliminary injunction, stating:

"[W]e cannot sustain a preliminary injunction ordered by the district court where either or both

of these prerequisites are absent."  Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 197 (3d

Cir. 1990) (quoting In re Arthur Treacher's Franchisee Litig., 689 F.2d 1137, 1143 (3d

Cir.1982)); see also Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir.

1989); Morton v. Beyer, 822 F.2d 364, 367 (3d Cir.1987); Freixenet, S.A. v. Admiral Wine &

Liquor Co., 731 F.2d 148, 151 (3d Cir.1984).  Thus, Plaintiff's motion for a preliminary

injunction is denied to the extent that it seeks injunctive relief seeking to enforce the

Confidentiality Provision.

          d)    *Enjoining/Restraining Defendants From Doing Business With Any*
                *Existing or Potential Clients of Plaintiff.*

Plaintiff seeks to enjoin/restrain Defendants from directly or indirectly doing business

with (which shall include servicing, selling, and/or soliciting) any, clients, affiliates, partners or

-17-

prospects to become any of the foregoing whom Plaintiff serviced, worked with, sold to, and/or solicited during Kimble's employment with Plaintiff.  As discussed above, the Court finds that Plaintiff has failed to demonstrate a lack of immediate, irreparable harm with respect to disclosure of its client lists since same have already been disclosed.  Thus, to the extent that the relief listed above references clients of Plaintiff, the Court declines to impose such relief.  To the extent that the relief references affiliates, partners or prospects of Plaintiff, such relief is denied for failure to demonstrate that any harm suffered by Plaintiff from such solicitation is both an immediate threat and irreparable by way of money damages.  Plaintiff concedes that its prospective clients are drawn from a common database to which all similarly situated companies have access.  Thus, Plaintiff is unable to establish that it will suffer immediate, irreparable harm without this relief being imposed since all companies, not only Kimble and University, have access to these customers' information.

With respect to the "affiliates" and "partners" of Plaintiff, the Court finds that Plaintiff has failed to establish that it will be irreparably harmed without injunctive relief.  In fact, Plaintiff has not clarified who these entities *are*, let alone how it will be irreparably harmed if the relief requested is not imposed.  A preliminary injunction is a "drastic and extraordinary remedy that is not to be routinely granted."  Intel Corp., 995 F.2d at 1568.  Thus, without these parties being defined, let alone specifically briefed by Plaintiff, the Court is unwilling to impose injunctive relief restraining Defendants from doing business with same.  Accordingly, Plaintiff's motion for a preliminary injunction is denied to the extent that it seeks injunctive relief restraining/enjoining Defendants from directly or indirectly doing business with (which shall include servicing, selling, and/or soliciting) any, clients, affiliates, partners or prospects to

-18-

become any of the foregoing whom Plaintiff serviced, worked with, sold to, and/or solicited during Kimble's employment with Plaintiff since Plaintiff has failed to establish one of the requisite elements for an injunction.

> e)      *Compelling Defendants to Cease from Using, and to Return, All of Plaintiff's Property in Their Possession, Including any Confidential Information.*

The State Court TRO ordered Kimble, University and Globex "to cease from using and return forthwith any and all of Plaintiff's property, including, but not limited to Plaintiff's Confidential Information, in their [possession], custody or control."  Consequently, the Court asked the parties during argument whether they had complied with this portion of the State Court TRO.  All Defendants represented to the Court that everything had been turned over to counsel and that they no longer retained any information alleged as Confidential Information or other property belonging to Plaintiff.  (Tr. 6:10-25 - 7:1).  Further, in its submissions to the Court in conjunction with its motion, Plaintiff does not specifically identify any document or information it claims has been withheld by Defendants in violation of the State Court TRO.  Accordingly, the Court deems Plaintiff's motion for a preliminary injunction moot to the extent that it requests Defendants to cease from using and return any of Plaintiff's information in their possession.

### 3.      Balancing of Harms & the Public Interest

The Court must next analyze the remaining prerequisites for imposition of preliminary injunctive relief: the possibility of harm to other interested persons from the grant or denial of the injunction and the public interest.  Ortho Pharm., 882 F.2d at 812-13; see also Wright Med. Tech., Inc. v. Somers  37 F.Supp.2d 673 (D.N.J. 1999).

With respect to the balancing of harms, the Court determines that this factor weighs in

favor of Plaintiff.  It is undisputed that Kimble left Plaintiff's employ on his own accord.
Although Kimble now attempts to justify this decision with allegations pertaining to misconduct
of Plaintiff in the Philippines and with respect to certain other of its business practices, these
concerns are generally unsubstantiated and are disputed by Plaintiff.  Further, as the Court noted
during oral argument, such alleged misconduct by Plaintiff and alleged harm to Kimble would
exist even in the absence of the pending motions and civil action herein.  (Tr. 32:19 - 34:8).
Thus, the Court determines that these allegations are irrelevant to its analysis.  Plaintiff,
University and Globex are all companies attempting to establish a foothold in the student loan
servicing telemarketing industry.  If the Court were to allow Kimble to resume employment with
University, this would undoubtedly cause hardship for Plaintiff which outweighs any harm to
Kimble.  Notably, Kimble is not barred from working in the entire telemarketing industry, only
from performing similar services for a direct competitor of Plaintiff's.

Further, the Court notes that if, as Kimble says is true, he is not soliciting current
employees of Plaintiff to join University, then this Court's enforcement of the Non-Solicitation
Provision via the present injunction will cause no hardship to Kimble.  However, if this Court
were to decline to enforce this provision of the Agreement, Plaintiff could suffer hardship as the
result of losing key employees to a close competitor.  Kimble clearly agreed to be bound by this
Agreement and represents to the Court that he has not, is not, and will not, solicit Plaintiff's
employees.  As such, the balance of harms weighs in Plaintiff's favor.

Although this matter is a private dispute between private parties, the Court nevertheless
finds that issuance of an injunction is in the public interest.  See Score Board Inc. v. Upper Deck
Co., 959 F.Supp. 234, 240 (D.N.J. 1997).  While the public has an interest in free competition, its

-20-

interest is also furthered by protection of private contractual rights.  "Judicial enforcement of

non-competition provisions of employment contracts serves the public interest by promoting

stability and certainty in business and employment relationships."  Wright Med. Tech., Inc. v.

Somers, 37 F.Supp.2d at 684 (citing AmeriGas Propane, Inc. v. Crook, 844 F.Supp. 379, 390

(M.D.Tenn. 1993).  The Court determines that the public interest is best served by enforcement

of the Agreement via preliminary injunctive relief.

Accordingly, the Court finds that Plaintiff has satisfied the final two elements of the

standard for issuance of a preliminary injunction with respect to the relief not already denied

supra.  The specific relief will be set forth in an Order accompanying this Opinion.

**C.**     **Defendant's Motion for Preliminary Injunction**

Kimble requests the Court to impose the following preliminary injunctive relief:

1) enjoin Scholastic from enforcing Article 5 of the Agreement, except that Kimble shall
not solicit or induce any of Scholastic's employees to terminate their employment in
order to become employed with University or for any other reason; and

2) declare that Kimble may become employed with University if these parties so choose
to resume their employment relationship.

This Court denied Kimble's prior request for these restraints to be imposed on a

temporary basis based upon its determination that Kimble had failed to demonstrate the risk of

immediate, irreparable harm as required by the Third Circuit.  The Court found that since the risk

posed to Kimble was his alleged inability to gain employment, such harm was purely monetary in

nature, and thus fully reparable by way of later money damages.  The Court finds that nothing in

the briefing submitted by Kimble in conjunction with the motion discussed herein nor argued by

his counsel during oral argument has altered this finding.  Even in the face of the current

injunction now imposed by the Court, Kimble remains free to seek and gain employment in the broader telemarketing industry so long as he does not seek employment with a competitor of Plaintiff as defined in the Non-Compete Provision.  Kimble's arguments that he is unable to gain employment in the broader telemarketing industry because Plaintiff's actions have damaged his professional reputation is unsupported.  Kimble has not come forward with evidence that he has sought or been rejected by other employers, let alone that any rejection was caused by the actions of Plaintiff.  Accordingly, Kimble's motion for a preliminary injunction is hereby denied.

## <u>CONCLUSION</u>

For the reasons set forth in this Opinion, Plaintiff's motion for a preliminary injunction is granted in part and denied in part.  Defendant Kimble's motion for a preliminary injunction is denied.  An appropriate Order accompanies this Opinion.


DATED: April 24, 2007                              /s/ Jose L. Linares
                                                        United States District Judge